IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DONALD J. BREEN, | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-16-2581 |
| CECIL COUNTY | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Donald J. Breen ("plaintiff") filed this lawsuit against his former employer, defendant Cecil County ("defendant"), alleging employment discrimination based on age and disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, <u>et seq</u>. and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, <u>et seq</u>. The parties consented to proceed before a Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF Nos. 12, 14.) Currently pending before the court are Defendant's Motion to Dismiss ("Defendant's Motion") (ECF No. 18), Plaintiff's Opposition to Defendant's Motion ("Plaintiff's Opposition") (ECF No. 21), and Defendant's Reply to Plaintiff's Opposition ("Defendant's Reply") (ECF No. 22). The issues are fully briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons stated below, Defendant's Motion is DENIED.

I.  **BACKGROUND**

Beginning in May 2009, defendant hired plaintiff to work as an "Equipment Operator" in its Department of Public Works, a position that required plaintiff to have a commercial driver's license ("CDL") with a United States Department of Transportation ("DOT") certification card ("DOT Card"). (ECF No. 1 ¶¶ 6, 15–16, 57.) Plaintiff possessed a CDL and DOT Card at the time he was hired, and alleges that he maintained them throughout his employment with defendant. (Id. ¶¶ 17, 32.) In May 2011, plaintiff suffered a stroke with left basal ganglia hemorrhage and was hospitalized for one week, followed by in-patient and in-home rehabilitation services for at least one month. (Id. ¶¶ 18, 21, 24.) Plaintiff had never experienced a stroke before, but had been receiving treatment for hypertension. (Id. ¶¶ 19, 23.)

On July 21, 2011, plaintiff's treating physician, Dr. J.K. Patel, M.D., certified that plaintiff was "able to work a full-time regular schedule with no restrictions beginning August 01, 2011." (Id. ¶ 27.) Around the same time, defendant sent plaintiff to its own physician, Dr. Julie Poludniak, M.D., for an examination paid for by defendant. (Id. ¶¶ 1, 47.) Dr. Poludniak concluded that plaintiff was "not recommended for DOT driving" for five years, but that she would consider reevaluating his eligibility in one year.[1] (ECF No. 18-9 at 2–3.) Dr. Poludniak further restricted plaintiff from climbing, bending/kneeling, pushing/pulling greater than 100 pounds, and lifting/carrying greater than 50–75 pounds for a period of three months. (Id. at 3.) In accordance with Dr. Poludniak's assessment, defendant transferred plaintiff to a "Laborer" position. (ECF No. 18-4 at 3.) According to the official job description, the Laborer position required "constant physical effort" and the "ability to study for and obtain" a CDL "for Roads."

---

[1] Plaintiff maintains that Dr. Poludniak was not board-certified in occupational medicine and never validly revoked his DOT Card. (See ECF No. 1 ¶¶ 49, 56.)

(ECF No. 1 ¶¶ 38, 40.) The official description did not indicate that the Laborer position was a temporary position. (Id. ¶ 39.)

In November 2011, Dr. Poludniak removed plaintiff's temporary restrictions, but determined that plaintiff would not be eligible for a DOT Card for at least five years from the date of his stroke. (ECF No. 18-9 at 3.) Dr. Poludniak's determination conflicted with that of plaintiff's primary physician, cardiologist, and neurologist, all of whom agreed that plaintiff was eligible to return to his Equipment Operator position without restrictions in December 2011. (ECF No. 1 ¶¶ 1, 63.) Consequently, defendant terminated plaintiff on December 5, 2011, citing plaintiff's inability to maintain a valid CDL and DOT Card required for the Equipment Operator position,[2] as well as guidelines contained in a document entitled, "Expert Panel Recommendations Stroke and Commercial Motor Vehicle Safety" ("DOT Guidelines").[3] (Id. ¶¶ 54, 57, 68.) Defendant did not allow plaintiff to remain in the Laborer position despite his satisfactory performance. (ECF No. 18-10 at 2.) Plaintiff was sixty-five years old at the time he was terminated. (ECF No. 18-3 at 2.)

Subsequently, plaintiff made several formal and informal requests for reinstatement (both independently and through counsel) that were all denied. (See ECF Nos. 18-2–18-10.) Although

---

[2] More specifically, defendant claimed that it could no longer "hold open [plaintiff's] position" as an Equipment Operator once Dr. Poludniak extended plaintiff's commercial driving restriction to five years. (ECF No. 18-9 at 3.)

[3] The DOT Guidelines included the following recommendation: "Commercial drivers who wish to return to full work status should undergo a careful neurological examination at one year after the stroke that includes assessment of their cognitive abilities, judgment, attention, concentration, vision, physical strength, agility, and reaction time." (ECF No. 1 ¶ 74.) Defendant never referred plaintiff for a neurological examination, and terminated him prior to the end of the one year period. (Id. ¶¶ 75–76.) The DOT Guidelines also stated that:

> Individuals with occlusive cerebral vascular disease with fixed deficits involving areas other than the cerebellum and brain stem should not be considered qualified to obtain a license to operate a commercial vehicle for a five-year period following the episode. Evaluation by an appropriate specialist to confirm the area of involvement may be required for waiver of this restriction.

(Id. ¶ 78.) According to defendant, "[plaintiff's] stroke had been hemorrhagic in nature, and not in [sic] cerebellum or brainstem which, according to DOT Guidelines, required a minimum 5-year disqualification." (ECF No. 18-9 at 3.) Plaintiff contends that defendant never referred plaintiff to a specialist to evaluate whether a waiver of the restriction was appropriate in plaintiff's case. (ECF No. 1 ¶ 79.)

3

defendant repeatedly urged plaintiff to avail himself of the DOT administrative process for challenging employer medical determinations, (ECF No. 18-1 at 4–5), plaintiff instead timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1 ¶ 105.) The EEOC determined that defendant had discriminated against plaintiff on account of his disability and, after an unsuccessful mediation, referred the matter to the Department of Justice ("DOJ"). (Id. ¶¶ 106–108.) On May 12, 2016, the DOJ issued plaintiff a "right to sue" notice, and plaintiff filed suit in this court alleging violations of the ADA and ADEA. (Id. ¶¶ 109–110, 113, 127.)

## II.    DISCUSSION

Defendant moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). While the plaintiff bears the burden of proving that the court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should only be granted if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010). In deciding a Rule 12(b)(1) motion, the court regards the pleadings as "mere evidence on the issue," and may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999). Here, plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331, based on plaintiff's ADA and ADEA claims. (ECF No. 1 ¶ 111.)

In its Motion, defendant argues that jurisdiction is not proper because plaintiff failed to exhaust administrative remedies available under 49 C.F.R. § 391.47 ("DOT procedures") before bringing suit. (ECF No. 18-1 at 8.) Section 391.47 provides that, where there are conflicting

medical evaluations with respect to commercial driving qualifications, the driver may submit an application for resolution of the conflict to the Director of the Office of Carrier, Driver and Vehicle Safety Standards. 49 C.F.R. § 391.47. Within sixty days of the Director's determination, the driver may appeal the decision to the Associate Administrator. Id. § 386.13. Thereafter, judicial review is available. Clark v. Skinner, 937 F.2d 123, 127 (4th Cir. 1991).

Defendant primarily relies on two cases to support its argument that exhaustion of DOT procedures is required for ADA claims involving driver qualifications: Harris v. P.A.M. Transp., Inc., 339 F.3d 635 (8th Cir. 2003) and Campbell v. Fed. Express Corp., 918 F. Supp. 912 (D. Md. 1996). (ECF No. 18-1 at 8–11.) In Harris, the court of appeals upheld the district court's dismissal of plaintiff's ADA claims based on a failure to exhaust section 391.47 procedures, concluding that "[t]he DOT is charged with and is much better equipped to handle resolution of disputes over a driver's medical qualifications . . . than a reviewing court." Harris, 339 F.3d at 638. Similarly in Campbell, the district court granted summary judgment in favor of defendant on plaintiff's ADA claims, reasoning that "[e]xhaustion of DOT procedures should be required . . . because a critical element of [plaintiff's] case, namely whether [plaintiff] met DOT qualifications for the courier position, falls squarely within the regulatory scheme (and substantive expertise) of DOT."[4] Campbell, 918 F. Supp. at 918. Relatedly, defendant urges this court to apply the "primary jurisdiction" doctrine, whereby a "federal court may properly refrain from exercising its judicial power so that an agency particularly equipped to address issues and charged with regulatory duties within its expertise may perform its functions." (ECF No. 18-1 at 9 (internal quotation marks omitted)); Campbell, 918 F. Supp. at 919.

---

[4] Under both the ADA and ADEA, a plaintiff must establish that he was "qualified" for the job in question in order to challenge an adverse employment action. See EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000) (ADA); Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (ADEA). For purposes of the ADA, a "qualified" person is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In his Opposition, plaintiff argues that defendant mischaracterizes the Complaint, and that the DOT procedures are not relevant or applicable to plaintiff's ADA and ADEA claims. (ECF No. 21 at 2.) Specifically, plaintiff contends that, rather than merely challenging defendant's medical determination, he is alleging that defendant manufactured a medical dispute as a pretext for its decision to fire plaintiff because of his age and perceived disability. (Id. at 5.) Plaintiff further alleges that defendant failed to engage in the "interactive process" required by the ADA with respect to potential reassignment,[5] and that he was, at a minimum, able to perform the "essential functions" of the Laborer position. (Id. at 8.)

After considering the parties' submissions, the court is not convinced that plaintiff's ADA and ADEA claims implicate the DOT procedures under section 391.47, much less that plaintiff must exhaust those procedures before this court can exercise jurisdiction over the case. Section 391.47 narrowly provides that a driver may seek an independent resolution of conflicting medical evaluations regarding driving qualifications.[6]  See 47 C.F.R § 391.47.  Plaintiff, however, does much more than challenge the merits of Dr. Poludniak's medical evaluation—he alleges a pervasive scheme of discriminatory treatment, including defendant's failure to make an individualized assessment of plaintiff's impairments (ECF No. 1 ¶¶ 116–117), to engage plaintiff in the interactive process (Id. ¶ 121), and to reasonably accommodate plaintiff by retaining him as a Laborer or reassigning him to a vacant position (ECF No. 21 at 10). Section 391.47, to the extent it is relevant, does not provide plaintiff an opportunity to challenge his termination on these grounds.

---

[5] "The ADA imposes upon employers a good-faith duty to engage [with their employees] in an interactive process to identify a reasonable accommodation."  Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 581 (4th Cir. 2015) (internal quotation marks omitted); see also 29 C.F.R. § 1630.2(o)(3).

[6] Notably, section 391.47 is silent as to exhaustion and judicial review.

Defendant argues that this court should decline jurisdiction as a matter of administrative deference, but the cases it relies on are inapposite and readily distinguishable. First, the plaintiffs in Harris and Campbell were challenging the defendants' failure to hire them, not the defendants' decision to terminate them, and the bulk of plaintiff's factual allegations in this case are specific to a claim of discriminatory discharge.[7] Moreover, even in Campbell, the court noted that the exhaustion defense could be rebutted by a showing of "pretext," but concluded that the plaintiff in that case had not made a sufficient showing of discriminatory intent.[8] Campbell, 918 F. Supp. at 917. By contrast, here, plaintiff has alleged facts sufficient to give rise to an inference of pretext, including defendant's decisions to terminate plaintiff prior to his one year reassessment (ECF No. 1 ¶¶ 75–76) and to hire younger, non-disabled employees for the Laborer position (Id. ¶¶ 60–62). To require exhaustion of DOT procedures under these circumstances, where a plaintiff has alleged discriminatory intent and a tainted process, would be futile and at odds with the remedial purposes of the ADA and ADEA. See Pathways Psychosocial v. Town of Leonardtown, 133 F. Supp. 2d 772, 780 (D. Md. 2001) ("As a remedial statute, the ADA must be broadly construed to effectuate its purpose." (internal quotation marks omitted)). In any case, these considerations are not jurisdictional in nature, and plaintiff's suit should proceed to discovery. See Williams v. J.B. Hunt Transport, Inc., 826 F.3d 806, 810 (5th Cir. 2016) ("No statute requires that an ADA plaintiff exhaust the § 391.47 process before filing a lawsuit, let alone does so in jurisdictional terms. Thus, the district court should not have dismissed this ADA claim for lack of subject-matter jurisdiction." (citations omitted)).

---

[7] For example, plaintiff's allegations regarding defendant's failure to engage in the interactive process and to consider reassignment would not apply in the same manner, if at all, in the context of a "failure to hire" claim.

[8] Campbell, for its part, came to the court on a motion for summary judgment, and thus provides little guidance to this court in reviewing a motion to dismiss before the factual record has been fully developed.

## III.  CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 18) is DENIED, as set forth above.


Date:  March 24, 2017                             _____/s/_____
                                                  Beth P. Gesner
                                                  United States Magistrate Judge